The next case of the day, Stuhlmacher v. Home Depot, 14-2018. Mr. Clement. Good morning, Your Honors. Good morning. My name is James Clement, and I represent the plaintiff's appellants, Kurt Stuhlmacher and Kelly Stuhlmacher. This is a product liability case. The plaintiff's appellants survived summary judgment and Dauber motions and went to trial in April of this year. And at the conclusion of the plaintiff's case, Judge Radovich questioned the plaintiff's expert regarding how the accident occurred and whether or not there was a causal connection between the manufacturing defect and the way in which the plaintiff described how he fell from the ladder. Was it your theory at trial that the spreader bar bracket came loose from the right rear rail before Kurt fell? No. The theory, Your Honor, was that the defect that was found by the plaintiff's expert was this undersized rivet without an annular lip that was overtightened and created this place where cracking would occur. Okay. So the theory was, and I think what was misunderstood or mischaracterized and then misunderstood maybe by Judge Radovich, was that the spreader bar was disconnecting. We don't know exactly at what point it completely separated from the rear rail of the ladder. But the theory was that as Mr. Stuhlmacher both set up the ladder and then ascended the ladder and came to rest on the seventh step, that the rivets, these improper rivets, were now slicing through or prying through the fiberglass rail, which would have caused this instability. Okay. But we don't know exactly, and I think that's even consistent with Dr. Connery, the plaintiff's expert, that it was beginning to separate and whether it separated while Mr. Stuhlmacher was still on the ladder prior to the fall or if it happened at some point once the ladder began to fall or when it fell or finally when Mr. Stuhlmacher fell onto the ladder. That is our position, that it was... I'm confused on the fall because I'm just looking at your brief. His testimony was that all of a sudden the ladder went to the left, and I'm not clear how the ladder goes to the left. I'll set the ladder up this way. Did the ladder fall to the left or did something else happen? The ladder fell to the left. Like this? Tipped over from the top and fell over? No, no. If the ladder is set up like this and he climbs up the ladder, the ladder fell to the left. So it continued in its kind of an A shape and it fell to the left. Yeah, but that's what is confusing me because it's the right spreader. Correct. And if it fell to the left, how does he fall on the right spreader? Well, and that is exactly what Dr. Connery tries to explain because the plaintiff simply says, it's a brand new ladder. He sets it up. He's a ladder guy. He works and has to be certified in the use of ladders and scaffolds. He sets the ladder up. He climbs the ladder, and as he's screwing a screw into a purlin in a rafter, from his perspective, the ladder just takes off to the left. Dr. Connery, the expert, had to try to explain that, and what he said was that if the right spreader bar is beginning to separate, the only explanation for the ladder to fall to the left would be that Stuhlmacher, the plaintiff, would have been adjusting his balance based upon the separating of the right spreader. He would have been attempting to compensate for that movement to the right by moving to the left, and when he did that, his body movement would have sent the ladder to the left. Wait a minute. This is what's bothering me. When the right spreader is disintegrating or what's happening, the weak side of the ladder is on the right side, and it would seem just by gravity alone it's got to fall to the right. Well, and I think you're correct on that. That's why it would take Kurt Stuhlmacher, the plaintiff, to actually physically kick or move the ladder for it to go to the left, and that's exactly what Dr. Connery was trying to explain, why he believed that Kurt, and that's where the difference in the testimony where the plaintiff says it just shot to the left and where Dr. What do you mean suddenly? Pardon me? Shot to the left. That's a sudden movement. Sudden movement, and that's where Dr. Connery says, the plaintiff's expert says, well, for that to have happened, for it to go to the left based upon that right spreader separating, Kurt Stuhlmacher would have had to have subconsciously experienced some sort of a losing of his balance, and then he moved, and by trying to move the weight back to the left, he ends up kicking the ladder out from underneath him. So what the expert seems to be saying is he's not talking about the laws of nature or gravity or anything else, or whatever physics is involved. He's talking about the reaction that would have to have caused this thing to fall to the left, because it would seem if the spreader is broken on the right side and the ladder falls to the left somehow, that when he falls, he's going to wreck the spreader. It just seems it's counterintuitive for the spreader on the right to give way when normally the ladder would go this way. Right. Instead, the ladder's suddenly going this way. Correct. And he grabs onto the rafter. That's exactly right. And then he somehow ends up falling on, I guess, the right leg, which would be understandable if the ladder's laying over this way. Well, he fell to the left, and when he landed, after grabbing onto the rafter, when he landed, he ended up straddling the front rail. The front what? The front rail. We call them front and rear rails. The stairs of the ladder are between the front rails, and then the back rail, the rear rails, are the ones that are connected with the spreader bar. I guess I'd call those legs. Legs. I spend some time on ladders, but this man was an expert on ladders. This was what he did, right? Right. This was his regular work. This happened to be at home someplace else. Yes. And that's why I just don't understand the physics of it. Yeah, well. And the only way to explain the physics of it is something remarkable, that the plaintiff reacted when the ladder suddenly shot to the left. And the only natural reaction I see is when it falls to the left, and he falls on it, and that rips the rivets out. Well, it was a 10-foot step ladder, and he fell on the very end of the front rail. Yeah, where all the leverage is, and so that's where all the weight's going to go. He's 230 pounds, right? He's 230 pounds. Right. Okay, well, I'm not an expert on falling off of a ladder. I've had other problems, but that isn't one of them. Right. All right, well, I guess just to sum it up, the case turned on the testimony, and whether or not Kurt Stuhlmacher's testimony that it just shot to the left, and Dr. Connery's testimony that it couldn't have just shot to the left because it was the right bracket. So his testimony is just not accurate. Pardon me? It didn't shoot to the left. It didn't shoot to the left, and it didn't just shoot to the left. That's correct. Our position has always been, you know, the guy's standing up there working, and he's surprised by whatever takes place, and his layman's explanation is one minute I'm up on a ladder, and the next moment I'm down on the ground. And so, you know, he didn't go through some, you know, this is what happened first and this is what happened next, but that's what Dr. Connery was there to do. He provided the testimony regarding the defect in the ladder and that it was an unstable structure as Mr. Stuhlmacher was on it, and where apparently the judge took issue is that Kurt didn't say, I lost my balance and I tried to overcompensate or compensate for it by moving to my left. He never said that. He just testified that it shot to the left. His wife was standing there too, right? His wife was at the foot of the ladder. Was she holding the ladder? She was, yeah, holding the ladder at the base. Well, her testimony sounds a little more credible. What'd she say? Well, she said the same thing. I mean, she didn't hear or see any spreader bar break. She's standing right in front of it. She's standing right in front of it. And it fell the other way. Well, she's standing here and it falls that way, right? Well, I mean, I've got it like this. She's standing to the right of the steps. That's correct. And he's this way and she's this way, and the ladder goes that way. That's correct. And the spreader broke over here. Correct. Okay. All right. Thank you. Okay, thank you. Mr. McCorry. Thank you very much, Your Honors. John McCorry on behalf of the defendants. So what's your theory of how this happened? Well, we never got to our expert. So the theory, our theory would essentially be that he just lost his balance on top of the ladder and that Dr. Connery was not, his opinions were not relevant or reliable. So we asked that the district court be affirmed with regard to that. And did the judge specifically find that Connery's testimony was unreliable? He said that the testimony, he didn't use the word reliable specifically, but what he said was that the testimony did not connect the alleged manufacturing defect with the cause of the fall, which would be what the court perceived all the way through the case as the spreader bar coming loose from the right rear leg or rail. And contrary to what plaintiff's attorneys have said here, this is actually demonstrated in the order denying the motion for summary judgment. In describing Dr. Connery's testimony, the district court says, Dr. Connery pointed to physical evidence to show why he believed the problems instead resulted from the manufacture of the ladder.  And based on the markings, this had to occur during manufacture. This ultimately led to the separation of the spreader bracket from the rail and caused Kurt's fall once force was applied. So plaintiff's theory up through summary judgment was the spreader bar came loose and that caused the ladder to fall. Then during trial for the first time is when Dr. Connery is attempting to go around that and say, well, no, it didn't actually come loose. It didn't break loose. There was just this cracking and it caused a subtle shift and somehow Mr. Stuhlmacher involuntarily moved somehow and then the ladder fell. But what's important, and that the district court noted as well, and what Judge Mannion pointed out as well, is that Mr. Connery did not consider the wife's testimony. She's standing right there on the side where the spreader bar supposedly comes loose. She doesn't hear anything break or snap, doesn't see anything. Again, just all of a sudden the ladder just goes to the left. And that's what Mr. Stuhlmacher says as well. And then once he falls, he falls on the right front leg, which is where the steps are. On the bottom three steps there's indentations. And again, as Judge Mannion pointed out during that, that could cause the spreader bar from the left to pull upward and pull the rivets out. It's almost like a seesaw effect. So Mr. Stuhlmacher falls on it on the one side and that brings the spreader bar out on the other side. Wait a minute, which side did the spreader bar come out? The right rear. So he falls on the right front. The ladder falls in the opposite direction of where his wife is standing. Yeah, it falls to the left. She's standing to the right, but she's still near where he then fell. Yeah, well, this is crazy, but the ladder goes this way. That means this leg's sort of sticking up or something's happened to it, spread out, I don't know which, and then he falls. Yes, the ladder's on it. He didn't fall on her. The ladder fell the other way. Yes, exactly, which is why it would appear most likely that he just lost his balance. The ladder falls to the left, and then he falls on top of it because there's nothing to show that the spreader bar was cracking or that it separated prior to the fall. So the spreader breaking did not cause the ladder to tilt over. That's your theory. Yes, that's correct. Their theory is it broke and caused the fall. Well, that's what they said in response to our summary judgment motion, but then at trial they start to try and switch and say there's just this cracking which causes the ladder to become unstable. So then they switch their entire theory. But our theory is he lost his balance for whatever reason, and then the ladder falls over to the left, so then all of a sudden he falls on the right front leg, which is up in the air now. His ladder's laying on its left side, and that's near the bottom where the spreader bar is, and then that causes the spreader bar to pop out. So the damage, the cracking of the spreader bar occurs because he falls on it, and that's another factor that Dr. Connery does not take into account in his testimony, in his expert opinion. In fact, he did not review the deposition transcripts of either plaintiff. All he did was look at the ladder, what he describes as a close examination, and without any experience in the manufacture or design or construction. Excuse me. We're not here on a Daubert issue. We're here on a sufficiency of the evidence on the issue of causation. That's how the case was dismissed. So we're not reviewing whether the expert's testimony was or experience was sufficient under Daubert. The judge said that it was, and then after he testified said, there's insufficient evidence of causation, so I'm dismissing the case. And we have evidence of causation. We've got two different theories of causation here.  Toward the end of the second transcript, what the court actually says is that. Based on causation. Well, no, it says, I will find that given the testimony of Dr. Connery that there is not any expert link saying that the manufacturing defect he found caused the bracket to come loose and caused the fall. Right, that's a failure of proof on the issue of causation. He's not saying the expert is excluded. No, the very next sentence he says, so for the record I will say that the testimony of Dr. Connery would be stricken and the jury would be informed to disregard it. So this is if Dr. Connery never testified. And that was based upon our renewal of our motion in limine under Daubert. And we had a continuing objection throughout Dr. Connery's testimony based on the motion in limine under Daubert. Yeah, this isn't a Daubert ruling. This is no evidence of causation from the expert because of the conflict between what the plaintiff said on the stand and the expert's theory, which was then sort of morphed into a different theory during the course of his testimony. Well, that is, yes. So in order for the plaintiff to recover, did he need to establish that the rivet separated from the rail before Kirk failed? Well, that's what they were claiming all the way up through there. Well, why isn't it enough for him to establish that the connection was weakened and that caused him to lose his balance? Well, he didn't actually establish that. That's what the district court is pointing out here. But, I mean, the expert basically said that. It was weakened. That's what that whole ship, the cracking thing was about. Yes, but he had absolutely no support for that at all. He didn't do any testing to support that. That was purely speculative on his part. There was nothing that he did. But doesn't that go to the weight, not the admissibility of the testimony? Well, no, it goes to the admissibility because you have to look at whether or not it's reliable or relevant. And without any testing and without any experience in ladder manufacture, without looking at the testimony of the plaintiff and his wife and without looking at the applicable standards, Were all those arguments made during your Dalbert motion? Yes, they were. Which the court rejected? At the summary judgment stage. We renewed it when Dr. Connery testified at trial and continually made objections as to speculation under Dalbert throughout. And then once we voir dired him and the district court heard that he could not say that the spreader bar separated from the ladder, which was his understanding of what the theories, the plaintiff's theory of the case was and which is set forth in the summary judgment order, the judge said, all right, well, I'm barring the testimony and there's no other evidence of causation. There's no evidence that this so-called manufacturing defect caused the ladder to fail and caused Mr. Stuhlmacher to fall and therefore a directed verdict in favor of the defendants. I understood that right toward the end of the testimony where the expert was equivocating. Well, he couldn't say for certain. I don't remember the language right now. It wasn't that he said he didn't know probability well. He couldn't say something or it was very vague. That's what I thought when the judge said, wait a minute, and you mean you can't say unequivocally? I don't know the court. That's exactly it, yes, toward the end when the defendant's attorney is conducting voir dire. He says he's impeached with his deposition testimony. He says, in your opinion, based upon a reasonable degree of engineering certainty, when did the bracket disassemble from the right rear rail? Answer, that's a question that I really can't answer. And the court says, where does that leave us? And then it gets into the plaintiff's attorneys making this argument for the first time that, well, it's just two different versions of the same event, which is not the case because the laws on case, they try and rely on the expert there, actually did do a bunch of tests to help support his conclusion, and that is not the case here. Therefore, we ask that the decision of the district court directing verdict in favor of defendants be affirmed. All right. Thank you. Thank you. One minute. I'll give you one minute. This is a case about causal link, not about testing and anything else. All those arguments were indeed rejected by the trial court. He found Dr. Connery to be an accident reconstructionist. And again, I say that the total separation of the spreader bar or bracket from the rear rail, that has been characterized differently. It certainly was separated. At some point when the ladder was on the ground, the spreader bracket was disconnected from the rear rail. But this case is more of a laws on case. I know it's an Eighth Circuit case, but clearly in that case the expert even contradicted the plaintiff's version and said that it couldn't have happened the way that you described it and posited his own theory of how it happened. And ultimately while the district court granted summary judgment in favor of the defendant in that case, the Eighth Circuit said no, there was a close enough nexus between what the plaintiff was saying and what the expert said that that should be a jury question, not a, you know, so the judge abused his discretion by taking that question away from the jury. That's our position in this case as well. All right. Thank you. Thank you both counsel. We'll take the case on.